**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| 2018 1500-1501 East Austin, LP; 2013 Austin East 12th Street, LP; 1522 and 1600 East 12th Street, LP; and The Dobie Company, LLC, | § | |
| *Plaintiffs,* | § | Case No. 1:26-cv-1870 |
| v. | § | |
| City of Austin, Texas, | § | |
| *Defendant.* | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs 2018 1500-1501 East Austin, LP (hereinafter "East Austin"), 2013 Austin East 12th Street, LP ("2013 Austin East"), 1522 and 1600 East 12th Street, LP ("1522/1600"), and The Dobie Company, LLC ("Dobie") file this Original Complaint against Defendant City of Austin, Texas (the "City") and allege as follows:

## I. NATURE OF THE ACTION

1. Plaintiffs are a group of affiliates who have been assembling properties on a block on East 12th Street, in Austin, with a unified plan to develop the entire block into a large development of mixed commercial and multi-family residential units in a manner that has been consistent with the City's zoning regulations.

2. Thwarting, if not destroying altogether, those permissible development plans, the City denied Plaintiff East Austin's application to demolish an existing structure on its property—a cornerstone site for the redevelopment plan—and designated the existing structure on East Austin's property as "historic."

3. The East 12th Street block can no longer be redeveloped in the legal and permissible manner for which its owners intended and have actively planned. As a result of the permit denial and designation of the East Austin property as "historic," Plaintiffs' overall development plans for the block in question have also been interfered with, damaged, or destroyed.

4. Initially, Plaintiffs filed state-law claims in Texas state court in Travis County. As discovery proceeded and favorable federal Takings Clause precedent developed, Plaintiffs decided to nonsuit the state-court action and vindicate their rights through federal-law claims brought in federal court. Given the discovery in the state-court action, Plaintiffs anticipate this case should be able to proceed without unnecessary delay.

## II. PARTIES

5. Plaintiff 2018 1500-1501 East Austin, LP ("East Austin") is a Texas limited partnership with its principal place of business in Austin, Texas.

6. Plaintiff 2013 Austin East 12th Street, LP ("2013 Austin East") is a Texas limited partnership with its principal place of business in Austin, Texas.

7. Plaintiff 1522 and 1600 East 12th Street, LP ("1522/1600") is a Texas limited partnership with its principal place of business in Austin, Texas.

8. Plaintiff The Dobie Company, LLC ("Dobie") is a Texas limited liability company with its principal place of business in Austin, Texas.

9. Defendant City of Austin, Texas (the "City") is a municipality of the State of Texas. It may be served by serving Mayor Kirk Watson at 301 West 2nd Street, Austin, Texas 78701. Tex. Civ. Prac. & Rem. Code § 17.024(b); *see* Fed. R. Civ. P. 4(j)(2) (local government may be served by, *inter alia*, service in a manner prescribed by state law).

## III. JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367 because the action asserts claims arising under federal law and the remaining claims asserted under state law are so related to the federal claims that they form part of the same case or controversy under Article III of the U.S. Constitution.

11. This Court has personal jurisdiction over the City because it is a municipality of the State of Texas and operates within this judicial district.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because the City resides in this District, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

## IV. FACTS

### A. Plaintiffs identify and acquire property development opportunities in Eastside Austin and pursue a demolition permit to commence redevelopment.

13. Plaintiffs are real estate development entities led by a family of Hispanic heritage (the "Campos Family").

14. Over the past decade, the Campos Family has strategically identified multiple properties in Austin east of I-35, all situated on and encompassing a single block, for acquisition and future development. The Campos Family envisioned the block as consisting of mixed commercial and multi-family residential units, bringing more businesses and housing to Austin.

15. This development plan would be fully consistent with Austin's zoning regulations and ordinances. The redeveloped block would provide a positive contribution to the Austin community, bringing economic revitalization to an area in need of it and serving the housing and related commercial needs of many of Austin's residents.

16. Most of the structures on the identified block were old, run-down, vacant, and abandoned. The buildings had been in a state of disrepair for years, and the City had documented issues with these buildings for years prior, often issuing Code violation notices or citations related to the deteriorated condition of the structures.

17. In 2015, East Austin acquired the property located at 1500 East 12th Street—a large corner lot situated at the corner of Comal Street and East 12th Street. The East Austin property consists of an old, dilapidated structure with a large footprint of approximately 3,292 square feet and a lot of about 0.362 acres.

18. Under the direction of the Campos Family, the other Plaintiffs acquired all of the other properties on the same block between 2014 and 2019. These include the properties of 1506 East 12th Street, 1510 East 12th Street, 1514-1518 East 12th Street, 1522 East 12th Street, 1600 East 12th Street, 1604 East 12th Street, 1606 East 12th Street, 1608-1614 East 12th Street, and 1204 Leona Street.

19. The image below shows the block of properties Plaintiffs own, with a red circle identifying the East Austin property with the dilapidated structure in place:



20. When East Austin purchased its property, it was entirely zoned as CS-MU-NCCD-NP—in other words, not historic. The City had previously issued a demolition permit for the address in 2004 when the property was owned by a different owner, a religious organization named "Ministry of Challenge." However, the permit expired in 2005. When that permit application was submitted, the City's Historic Preservation Office did not designate the property as historic.

21. The City had never previously sought historic designation for the East Austin property's structure because the structure is, in fact, neither historic nor appropriate for historic designation.

22. In fact, in 2016, after East Austin purchased the property, the City obtained a Historic Resources Survey that evaluated the history of Austin. The property was included in a lengthy list of thousands of properties identified as potentially eligible for historic preservation in the final report dated October 24, 2016. But, until this dispute, the City never took action to designate the East Austin property as historic following that survey.

23. The structure located on the East Austin property is run-down and hazardous. It last functioned as a place that offered housing for substance abusers, but the structure had been vacant for years prior to East Austin's purchase. In February 2024, a report by a licensed Texas Department of State Health Services asbestos consultant revealed that certain materials in the structure, such as tile, drywall, and exterior siding, contained asbestos. East Austin hired various engineers, and each had concerns about the safety of the structure, including, but not limited to, the minimal, unsafe road setback from the structure, and light poles and electrical lines dangerously close to the corner of the structure. An engineer hired by East Austin opined that the structure is "a disaster waiting to happen," and that "[a]nything other than demolition is a safety hazard to the community."

24. After completing asbestos remediation, East Austin applied to the City for a demolition permit on or about May 20, 2024, so that Plaintiffs could begin the process of redeveloping the East Austin property and their other properties. East Austin's filing of the application for a demolition permit had the effect of creating a vested right, freezing land use regulations as they applied at that time.

**B. The City pursues historic designation of the East Austin property absent owner consent because East Austin applies for a demolition permit.**

25. Shortly after East Austin applied for the demolition permit, the City initiated historic designation proceedings. After a review by the Historic Preservation Office and based on a decision by the Historic Landmark Commission that the East Austin property had historic value and must be preserved, East Austin's demolition permit application was effectively denied. The City Planning Commission and City Council each accepted the designation recommendation without meaningful independent review.

26. Under § 25-2-352(a) of the City Code, the City may designate a structure or site as historic if:

- The property is at least 50 years old and represents a period of significance of at least 50 years ago;

- The property retains a high degree of integrity (as defined by the National Register of Historic Places) that clearly conveys its historical significance and does not include an addition or alteration which has significantly compromised its integrity; and

- The property demonstrates significance in at least two of the following categories: (i) architecture; (ii) historical associations; (iii) archaeology; (iv) community value; and (v) landscape feature.

27. The East Austin property does not meet the criteria. First, the City's 2016 Historic Resources Survey itself noted that there was "no style" for stylistic influences of the structure and

noted that there had been changes to the architecture (e.g., doors replaced, windows replaced, exterior wall materials replaced, fenestration altered, and top porch enclosed). Second, the structure has been vacant for years and offers no community value. Third, it is a hazardous location for substance abuse, encroaches on the public right-of-way, and prevents public access to safe sidewalks at a prominent intersection. Fourth, any historical associations are not sufficient to warrant rezoning. Finally, on information and belief, the structure was previously a grocery store, a barber shop, a club, a place where members of a historically Black fraternity met or resided for approximately two years, a beauty shop, a motel, and a place that offered housing to people struggling with substance abuse—none of which satisfies the criteria for historic designation.

28. Members of the Eastside Austin community do not attribute historical significance or value to the structure. Rather, they consistently view it as a meeting place for illicit and disreputable activity, with some community members viewing the labeling of the property as historic as an insult to Eastside Austin.

29. The City's designation was irregular and unusual. Since 1990, the City had designated a building as historic without owner consent just four times before this designation, and now another property in close proximity to the East Austin property owned by a Campos Family-led entity is currently undergoing historic designation proceedings. Unlike those Eastside Austin properties, the previous four designations involved properties with demonstrated historic features.

30. The City's denial of East Austin's demolition permit, in reliance upon the improper designation of the structure as historic, was itself wrongful. The permit denial and historic designation, now final decisions of the City of Austin, have prevented Plaintiffs from redeveloping and using the East Austin property and Plaintiffs' other properties for their legally permissible and intended purposes.

31. Additionally, the City's decision to rezone the East Austin property as historic was effectively an order requiring East Austin to spend at least $1 million, but possibly between $2.6 million and $5.7 million according to the City, to restore and preserve a structure it intended to demolish and that the Travis County Appraisal District valued at $0. The City itself never tried to purchase the East Austin property or contribute to restoration efforts. The amount East Austin would have to spend on preserving this structure is expected to exceed the amount East Austin paid to acquire the property.

**C. East Austin continues to suffer inconsistent or conflicting regulatory action by the City.**

32. The morning after the historic designation decision was made and before East Austin even received official notice of the zoning change, City Code Inspector Willis Adams returned to the property that he had been monitoring for years to report alleged violations. But this time, he recommended that East Austin "[o]btain all building permits and trade permits for restoration of the *historic* building" within 30 days. (Emphasis added). Adams reported the alleged violations concerning the new historic designation of the structure before the ordinance making the property historic even became effective. *See* City Ordinance No. 20241212-090 (providing the Ordinance "takes effect on December 23, 2024").

33. That morning, Adams also telephoned East Austin's representative to notify East Austin that the door to the structure was open and that there must have been a break-in. Then, a few days later, East Austin received notice of 15 new alleged Code violations reported by Adams from the date of his visit, including several violations that concern the *interior* of the structure. Documents received from the City through open records requests indicate that Adams or someone affiliated with the City wrongfully entered the fenced premises of the East Austin property and

entered the structure to conduct inspections without owner consent. No warrant was issued for these searches.

34. East Austin appealed the Code violations and filed a complaint against Adams with the City Building and Standards Commission ("BSC"). On April 23, 2025, East Austin attended its appeal hearing at the BSC. East Austin explained the impossibility of performance to remedy the Code violations within the time frame demanded. East Austin also explained that while demolition is typically a remedy to cure such Code violations, the historic designation prevented East Austin from employing that remedy. The BSC refused to reverse the Code violations or to provide East Austin with more time to resolve the violations, but East Austin and the City eventually reached an agreement to temporarily stay enforcement of the violations and East Austin's required historic preservation efforts pending legal proceedings.

35. Although the structure on the East Austin property meets all of the requirements for issuance of a demolition permit, the City refuses to approve such a permit.

**D. The City's actions were taken pursuant to official municipal policies.**

36. The City's actions as described herein were taken pursuant to official policies, customs, and practices of the City, and/or were and are the acts of final policymakers for the City.

37. The City Council is the final policymaker for the City with respect to zoning and historic designation decisions. The City Council's adoption of City Ordinance No. 20241212-090, designating the property as historic, constitutes an official policy of the City that directly caused the constitutional injuries described herein.

## V. CAUSES OF ACTION

### Count I: Takings Under the Fifth Amendment of the U.S. Constitution through 42 U.S.C. § 1983—All Plaintiffs

38. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

39. The Takings Clause of the Fifth Amendment of the U.S. Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. The City committed a taking in violation of the Fifth Amendment when it stripped East Austin of the use of the East Austin property under the guise of "historic preservation" without just compensation. And the City likewise took or damaged the other Plaintiffs' properties by sapping those properties of their value as part of an integrated development plan for residential and commercial amenities on the East 12th Street block acquired by Plaintiffs.

40. The takings are impermissible, and no amount of compensation can authorize the City's actions because the property was not taken for public use. While the City asserts it has acted for historic preservation purposes, its stated purpose is pretextual, in bad faith, and arbitrary and capricious. Instead, the City took arbitrary action toward East Austin and the other Plaintiffs to prevent them from exercising their rights to develop the properties.

41. In addition, because of the above-described final decisions of the City, including its intentional but erroneous historic designation and denial of a demolition permit, the City committed a regulatory taking of Plaintiffs' properties.

42. More specifically, the City's permit denial decision and historic designation decision are regulatory actions that have occurred in an unauthorized and/or unreasonable manner constituting arbitrary and capricious putative exercises of police power. These regulatory actions

also have interfered with East Austin's right to use and enjoy its property and with the other Plaintiffs' right to use and enjoy their properties. The City's decisions constitute regulatory action gone too far.

43. The historic designation is improper because the East Austin property does not satisfy the requirements for historic designation. The City accordingly has utilized an official policy and decision made by City officials to prevent the use of the East Austin property and the Plaintiffs' neighboring properties and to force a repurposing of these properties, all without the just compensation that is due under the circumstances.

44. The City's final decisions have had a severe, negative economic impact upon Plaintiffs. These decisions have eliminated the economic viability and economically beneficial use of the East Austin property and, in turn, Plaintiffs' other properties, as part of a comprehensive redevelopment plan for an entire block. These final decisions have also interfered with Plaintiffs' investment-backed expectations, which were reasonably grounded in the ongoing, permissible use of their properties for the joint comprehensive redevelopment plan described above.

45. Used as such, Plaintiffs' properties would have enjoyed a substantial increase in value well above and beyond Plaintiffs' investment cost, along with substantial annual profits derived from increasing cash flows generated by such use.

46. In addition, the City's actions have been improper and pretextual. The City knows that the East Austin property is not a historic property deserving of the designation the City has foisted upon it. The City also knows that by foisting the designation upon the property, demolition permits cannot be issued. Plaintiffs' redevelopment plans have been thwarted by what, in total, amounts to an unauthorized "downzoning decision"—the impact of which is to deprive Plaintiffs

of their vested rights to use the property for economically viable and beneficial uses within the use approval rights already granted to them by the City.

47. That a historic designation without owner consent has occurred in Austin on only four prior occasions, and only with regard to properties that satisfied the historic designation criteria, underscores the true character of the City's actions.

48. The City's regulatory actions have both temporarily and permanently deprived Plaintiffs of all economically viable or beneficial use of their properties.

49. The East Austin property has been rendered completely economically idle, with East Austin owning no more than a token interest while continuing to have to absorb and pay operating and ownership expenses indefinitely—including taxes, and restoration and preservation costs of up to $5.7 million according to the City. Moreover, the other Plaintiffs' properties were a part of a comprehensive development plan that is dependent upon the East Austin property's cornerstone inclusion in the overall development. These additional properties, like the East Austin property, have been damaged and will remain economically idle, as the East Austin property is unavailable to complete the assemblage development.

50. The City has regulatorily taken Plaintiffs' properties via a permit denial that is reliant upon its application of an ordinance that does not authorize such a taking or deprivation of use. The City's actions constitute a categorical taking, damaging, or destroying of Plaintiffs' properties and property rights without payment of just compensation in violation of the Fifth Amendment to the U.S. Constitution.

51. Plaintiffs seek to recover all damages lawfully recoverable due to the City's wrongful taking of the property, on a temporary and/or permanent basis, including but not limited to the fair market value of the properties but for the City's actionable misconduct and any and all

additional losses foreseeably incurred as a result of the City's refusal to purchase or condemn the properties and refusal to provide just compensation on a timely basis, in accordance with *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992), and/or *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), and their progeny.

**Count II: Takings Under the Texas Constitution—All Plaintiffs**

52. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

53. The Takings Clause of the Texas Constitution provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made...." Tex. Const. art. I, § 17. The Clause's prohibition on taking property recognizes the same types of takings encompassed by the Federal Constitution. *See Commons of Lake Houston, Ltd. v. City of Houston*, 711 S.W.3d 666, 676-78 & n.28 (Tex. 2025). In addition, the Clause prohibits damaging or destroying property.

54. The City's permit denial and historic designation decisions are regulatory actions that have occurred in an unauthorized and/or unreasonable manner constituting arbitrary and capricious putative exercises of police power. These regulatory actions have interfered with East Austin's right to use and enjoy its property and have interfered with the other Plaintiffs' right to use and enjoy their properties. The City's decisions constitute regulatory action gone too far that has taken, damaged, or destroyed Plaintiffs' properties, in violation of the Texas Constitution.

55. The City has not paid just compensation for the taking of the properties or provided any compensation at all.

56. Plaintiffs seek to recover all damages lawfully recoverable due to the City's wrongful taking of the property, on a temporary and/or permanent basis, including but not limited

to the fair market value of the properties but for the City's actionable misconduct, and any and all additional losses foreseeably incurred as a result of the City's refusal to purchase or condemn the properties and refusal to provide just compensation on a timely basis.

**Count III: Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution through 42 U.S.C. § 1983—East Austin**

57. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

58. The Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

59. To prove a "class of one" claim, the plaintiff must show that (1) he "has been intentionally treated differently from others similarly situated" and (2) "there is no rational basis for the difference in treatment." *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

60. The City treated East Austin differently and unfairly from all other Austin citizens, residents, and property owners, and violated its right to equal protection in initiating and ultimately passing historic designation rezoning for the East Austin property and in denying East Austin's demolition permit application. The City had multiple chances to initiate historic designation in the past but chose not to act until East Austin applied for a demolition permit—the same as had been issued to the prior owner of the property—so that it and Plaintiffs could begin implementing their redevelopment plan.

61. The previous owner of the property in 2004—when a demolition permit was issued—was an entity named "Ministry of Challenge." Without justification, the City treated East Austin differently than it treated Ministry of Challenge. Ministry of Challenge and East Austin

were similarly situated in both wanting to demolish the structure. There is insufficient justification for the City's difference in treatment between Ministry of Challenge and East Austin when it comes to demolition of the structure. Whether a religious organization or a developer sought to demolish the structure has no bearing on whether the structure should be rezoned and designated as historic.

62. The City also lacks any rational basis for allowing a religious organization to demolish a structure but denying a developer the ability to do the same. The City's lack of any rational basis is underscored by the fact that the City has acted arbitrarily toward East Austin and the other Plaintiffs to prevent East Austin from exercising its right to redevelop the property.

63. The City also has selectively enforced its laws to prevent the exercise of East Austin's property use rights by denying a demolition permit under circumstances where demolition is warranted, and all criteria for obtaining a demolition permit have been proven to be satisfied.

64. East Austin is entitled to monetary relief and injunctive, declaratory, and other equitable relief.

**Count IV: Violation of the Equal Protection Clause of the Texas Constitution—East Austin**

65. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

66. The Equal Protection Clause of the Texas Constitution provides "[a]ll freemen, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." Tex. Const. art. I, § 3. "[T]his provision applies to business entities, such as corporations." *HL Farm Corp. v. Self*, 877 S.W.2d 288, 290 n.4 (Tex. 1994).

67. "[T]he federal analytical approach applies to equal protection challenges under the Texas Constitution." *Bell v. Low Income Women of Tex.*, 95 S.W.3d 253, 266 (Tex. 2002).

68. For the reasons alleged above, the City's permit denial and historic designation decisions violate East Austin's right to equal protection under the Texas Constitution as well.

69. East Austin is entitled to injunctive, declaratory, and other equitable relief.

**Count V: Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution through 42 U.S.C. § 1983—East Austin**

70. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

71. The Due Process Clause of the Fourteenth Amendment to the U.S. Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

72. East Austin has a protected property interest, and the City's permit denial and historic designation decisions have deprived East Austin of its property without due process of law.

73. The City did not provide adequate procedural safeguards when depriving East Austin of its property rights.

74. The City's actions were arbitrary, capricious, egregious, and lacked any rational basis. The City's conduct was intentional or was undertaken with deliberate indifference to East Austin's constitutional rights. This conduct violated East Austin's right to be free from arbitrary and oppressive government action.

75. East Austin is entitled to monetary relief and injunctive, declaratory, and other equitable relief.

**Count VI: Violation of the Due Course of Law Clause of the Texas Constitution—East Austin**

76. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

77. The Texas Constitution states that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. Texas courts "generally construe the due course clause in the same way as its federal counterpart." *Tex. Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 658 (Tex. 2004). "Like the federal due process clause, this guarantee contains a substantive as well as a procedural component." *Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex. 1995).

78. For the reasons alleged above, the City has deprived East Austin of vested property rights without due course of law in violation of the Texas Constitution.

79. East Austin is entitled to injunctive, declaratory, and other equitable relief.

**Count VII: Violation of Texas Local Government Code Chapter 245—East Austin**

80. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

81. "Local Government Code Chapter 245 creates a system by which property developers can rely on a municipality's land-use regulations in effect at the time the original application for a permit had been filed." *Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 189 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (citation and internal quotation marks omitted).

82. Section 245.002(a) provides:

(a) Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any orders, regulations,

ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time:

> (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or
>
> (2) a plan for development of real property or plat application is filed with a regulatory agency.

TEX. LOC. GOV'T CODE § 245.002(a).

83. A permit applicant's rights "accrue on the filing of an original application or plan for development or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought." *Id.* § 245.002(a-1).

84. "Generally, Section 245.002 establishes that municipal regulatory agencies must consider a permit application under the terms of the ordinances that were in effect at the time a permit, development plan, or plat application was filed." *City of Houston v. Commons at Lake Houston, Ltd.*, 587 S.W.3d 494, 499 (Tex. App.—Houston [14th Dist.] 2019, no pet.). "These statutory rights are commonly referred to as 'vested rights,'" and they attach to the property owner's project. *Id.* (citation omitted). "Thus, Chapter 245 'freezes' the rules at the time the original application for a permit is filed and limits the rights of a municipality to change the rules in the middle of the game." *Id.* (citation omitted). Chapter 245 authorizes enforcement of its provisions through declaratory or injunctive relief. TEX. LOC. GOV'T CODE § 245.0026(a).

85. East Austin applied to the City for a demolition permit on or about May 20, 2024, so that Plaintiffs could begin the process of redeveloping the East Austin property and their other properties in accordance with the City's zoning regulations at the time. Under Section 245.002, that had the effect of freezing the terms of the ordinances that were in effect at the time and created vested rights in East Austin's project.

86. However, after these ordinances froze and the vested rights accrued, the City adopted a new ordinance designating East Austin's property as historic. This ordinance affected the property classification of the East Austin property, and Chapter 245 therefore applies to it. *FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 269 (Tex. App.—Fort Worth 2016, pet. denied).

87. The City's adoption of this new ordinance imposed new regulations on East Austin's property and destroyed the vested rights. Under the ordinances that existed at the time of East Austin's application, the City should have granted East Austin a demolition permit. But because of the new ordinance designating the East Austin property as historic, the City did not grant the demolition permit to which East Austin was entitled.

88. Accordingly, the City's historic designation and permit denial decisions violate Chapter 245 of the Texas Local Government Code.

89. East Austin is entitled to declaratory and injunctive relief.

**Count VIII: Violation of Austin City Code § 25-2-352(a)—East Austin**

90. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

91. As relevant here, under § 25-2-352(a) of the City Code, the City may designate a structure or site as historic if:

- The property is at least 50 years old and represents a period of significance of at least 50 years ago;
- The property retains a high degree of integrity (as defined by the National Register of Historic Places) that clearly conveys its historical significance and does not include an addition or alteration which has significantly compromised its integrity; and
- The property demonstrates significance in at least two of the following categories: (i) architecture; (ii) historical associations; (iii) archaeology; (iv) community value; and (v) landscape feature.

92. The East Austin property does not meet the criteria. The property obviously does not convey any historical significance as evidenced by the fact that members of the Eastside Austin community do not attribute historical significance or value to the structure and consider designating the property as historic an insult to the community.

93. And, as discussed above, that is because the East Austin property does not demonstrate any significance in architecture, historical associations, archaeology, community value, or landscape feature.

94. East Austin is entitled to declaratory relief.

**Count IX: Declaratory Judgment—All Plaintiffs**

95. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

96. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declarations, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

97. An actual controversy exists between the parties. The dispute between the parties is "definite and concrete, touching the legal relations of parties having adverse legal interests." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "[T]here is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. Issuance of the judgment "will serve a useful purpose in clarifying and settling the legal relations in issue," and it "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Env't Tex.*

*Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016) (citation and internal quotation marks omitted).

98. The Court is requested to declare the following:

- The City's taking of Plaintiffs' properties was not for public use.
- The City violated the Equal Protection Clauses of the U.S. and Texas Constitutions.
- The City violated the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and the Due Course of Law Clause of the Texas Constitution.
- Chapter 245 of the Texas Local Government Code mandates that the City's permitting department was required to consider the approval, disapproval, or conditional approval of East Austin's application for a demolition permit solely on the basis of the merits of the application under any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time the original application for the permit was filed for review for any purpose.
- The City's permit denial decision has occurred in violation or contravention of Chapter 245 of the Texas Local Government Code.
- East Austin's property should not have been designated historic, because it did not meet the criteria of § 25-2-352(a) of the Austin City Code.

## VI. ATTORNEYS' FEES

99. Pursuant to 42 U.S.C. § 1988(b), Plaintiffs are entitled to costs and attorneys' fees. *Id.* (permitting recovery of attorneys' fees in actions brought under 42 U.S.C. § 1983). Plaintiffs are additionally entitled to attorneys' fees under Texas Local Government Code § 245.006(c).

## VII. PRAYER FOR RELIEF

100. For these reasons, Plaintiffs respectfully request that the Court enter judgment in Plaintiffs' favor and award them:

a. Actual, direct, indirect, compensatory, and consequential damages;

b. Just compensation and other compensatory damages for the taking of property;

c. Pre- and post-judgment interest;

d. Attorneys' fees and costs;

e. Injunctive and declaratory relief; and

f. All such other relief to which Plaintiffs are entitled at law or in equity.

Date: July 9, 2026

Respectfully submitted,

By: */s/ Gavin R. Villareal*

Gavin R. Villareal
State Bar No. 24008211
Baker Botts L.L.P.
401 South 1st St., Ste. 1300
Austin, TX 78704
(512) 322-2652
(512) 322-8341 (Facsimile)
gavin.villareal@bakerbotts.com

Aaron M. Streett
State Bar No. 24037561
Baker Botts L.L.P.
910 Louisiana St.
Houston, TX 77002
(713) 229-1855
(713) 229-7855 (Facsimile)
aaron.streett@bakerbotts.com

V. Blayre Peña
State Bar No. 24050372
VBPena Law, PLLC
406 N. Lee St., Ste. 103
Round Rock, TX 78664
(512) 642-8585
blayre@vbpenalaw.com

ATTORNEYS FOR PLAINTIFFS