UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

No. 1:26-cv-01870

**2018 1500-1501 East Austin, LP, et al.,**
*Plaintiffs,*
v.
**City of Austin,**
*Defendant.*

## MEMORANDUM OPINION AND ORDER

Plaintiff 2018 1500-1501 East Austin, LP ("East Austin") moves for a preliminary injunction requiring the City of Austin to consider its demolition application based on the rules and regulations in effect when the application was filed. The Court DENIES the motion.

Chapter 245 of the Texas Local Government Code requires cities to apply the rules and regulations in force at the time an application is filed. The City of Austin, however, refuses to grant the demolition permit based on a *post-application* ordinance designating East Austin's property as historic. That is very likely unlawful, even assuming the property is historic. But there is no evidence that East Austin will suffer irreparable harm absent preliminary relief. East Austin has provided evidence that it must pay substantial carrying costs that are unrecoverable from the City, but it does not show that an injunction requiring the City to reconsider its application will lower or eliminate those costs. Without that showing, the Court must deny the motion.

## BACKGROUND

Plaintiffs are real estate investment and development entities that strategically identify properties in Austin to develop. One of the plaintiffs, East Austin, acquired property located at 1500 East 12th Street in 2015 to develop. This is a large lot situated at the corner of East 12th and Comal Street with an existing 3,292 square foot building. In 2016, the City conducted a Historic Resources Survey and included the East Austin building on a list of properties eligible for historic preservation. But the City did not designate the East Austin building as historic following the survey.

East Austin and the City dispute much about the building. East Austin says it has no historical value, was in a dilapidated state when acquired in 2015, and was always intended for demolition as part of a planned project that envisions developing the entire block into a mixture of commercial and multifamily residential units. The City counters that the building is a local landmark (in part because of its association with Buford Johnson, one of Austin's most successful African American businessmen of the 1950s), that its condition has worsened substantially since East Austin purchased it, and that as late as 2022 East Austin planned to keep the building.

The parties agree, however, on the following. East Austin applied for a demolition permit in May 2024. The City responded by enacting an ordinance on December 12, 2024, formally designating the East Austin property as historic. This designation imposes significant limitations and restrictions on demolition pursuant to the Austin City Code. Specifically, the owner has an obligation to preserve and repair the property, and cannot change the property, unless it obtains a discretionary "certificate of appropriateness" from the City. AUSTIN, TEX., CITY CODE ch. 25, art. 4, §§ 25-11-212(A)(1), 25-11-216–217 (2026) [hereinafter, "AUSTIN CITY CODE"]. And "[i]f

the commission determines that [any] proposed work will adversely affect or destroy a significant architectural or historical feature" of the designated building, then "the commission shall notify the building official that the application [for a certificate of appropriateness] has been disapproved[.]" *Id.* § 25-11-243(C).

The City's decision to designate the building and thus effectively prohibit demolition prompted Plaintiffs to file suit in Travis County district court. For reasons that are not entirely clear, Plaintiffs non-suited (dismissed) their claims before trial and refiled in this Court alleging federal constitutional claims alongside various state-law claims. One of those state-law claims alleges that the City violated Chapter 245 of the Texas Local Government Code, which requires cities to apply the regulations and ordinances in effect at the time an application is filed. East Austin then filed this motion for a preliminary injunction on the Chapter 245 claim to require the City to consider East Austin's demolition application without the ordinance designating the building as historic.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Geren*, 553 U.S. 674, 689–90 (2008)). "[A] plaintiff seeking a preliminary injunction must make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Starbucks Corp. v. McKinney*, 602 U.S. 339, 346 (2024) (quoting *Winter*, 555 U.S. at 20). "The final two injunction factors—balance of harms and the public interest—'merge when the Government is the opposing party.'" *Space Expl. Techs. Corp. v.*

*NLRB*, 151 F.4th 761, 773 (5th Cir. 2025) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). The plaintiff bears the burden of proving each element. *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

## Analysis

### I. Likelihood of success on the merits

East Austin is likely to succeed on its claim that the City violated Chapter 245 of the Texas Local Government Code by effectively denying its demolition application based on a post-application ordinance designating the property as historic.

At common law, "the right to develop property is subject to intervening regulations or regulatory changes." *Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247, 249 (Tex. App.—Austin 2011, pet. denied) (quoting *Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1999) (op. on reh'g)). But Chapter 245 of the Texas Local Government Code created an exception to the common-law rule. Chapter 245 states that "[e]ach regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time [] the original application for the permit is filed for review for any purpose, including review for administrative completeness[.]" Tex. Loc. Gov't Code § 245.002(a).

Chapter 245 was enacted "to alleviate bureaucratic obstacles to economic development." *Quick*, 7 S.W.3d at 128 (discussing the purpose of former Chapter 481 of the Government Code, the predecessor to Chapter 245). The Legislature concluded that, under the common-law rule, "administrative and legislative practices [caused] unnecessary governmental regulatory uncertainty." Act of May 11, 1999, 76th Leg., R.S., ch.

73, § 1(b), 1999 Tex. Gen. Laws 432. It found such practices had raised land-development costs and led to the repeal of previously issued permits, "causing decreased property and related values, bankruptcies, and failed projects." *Id.* Indeed, the legislative record shows that Chapter 245 was enacted in response to "the City of Austin [] purportedly impos[ing] new regulatory restrictions retroactively on development projects that were [] underway." *Harper Park Two*, 359 S.W.3d at 251.

Courts have thus held that when an agency changes its land-use regulations after receiving an application, "the agency cannot enforce such regulatory change to the detriment of the applicant." *City of Floresville v. Starnes Inv. Grp., LLC*, 502 S.W.3d 859, 869 (Tex. App.—San Antonio 2016, no pet.) (citing *Shumaker Enters., Inc. v. City of Austin*, 325 S.W.3d 812, 814 (Tex. App.—Austin 2010, no pet.)). The statute "freeze[s]" the rules as of filing and prohibits regulators from changing them "in the middle of the game." *Harper Park Two*, 359 S.W.3d at 250; *see also City of Houston v. Commons at Lake Houston, Ltd.*, 587 S.W.3d 494, 499 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (reiterating Chapter 245's freezing effect); *Vill. of Tiki Island v. Premier Tierra Holdings, Inc.*, 464 S.W.3d 435, 439–40 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (same). An agency must evaluate an application under "the land use regulations as they existed at the time the first permit application was filed[.]" *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 245 (Tex. App.—San Antonio 2012, pet. denied). These rights "are commonly referred to as 'vested rights[,]'" and attach to the property owner's "project." *Commons at Lake Houston*, 587 S.W.3d at 499 (citation omitted).

Having vested rights is not the same as having a right to a certain outcome. Chapter 245 still allows a city the flexibility to "consider the approval, disapproval, or conditional

approval" of an application so long as its decision is consistent with the ordinances that existed at the time of the application. TEX. LOC. GOV'T CODE 245.002(a); *see Vill. of Tiki Island*, 464 S.W.3d at 442–43 (explaining that the defendant city maintained the ability "to approve, disapprove, or conditionally approve [an] application so long as" it made that decision based on regulations in effect at filing). And to the extent that a city lawfully vests itself or its agents with discretion as to whether to grant a permit, exercising that discretion is consistent with Chapter 245. *See Town Park Ctr., LLC v. City of Sealy*, 639 S.W.3d 170, 190–91 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (holding a permissive resolution adopted before vesting did not create a right to an outcome, and the defendant city maintained discretion it had before the application).

Applying this law here, East Austin has made a strong showing that the City violated Chapter 245. When East Austin applied for a demolition permit in May 2024, Chapter 245 required the City to consider the application based on the rules and regulations then in effect. But the City did not do so. It refused to grant the permit application based on Ordinance No. 20241212-090, which was enacted in December 2024, *after* the permit was filed. The City does not contend that its refusal is based on existing discretion—indeed, East Austin maintains that it is entitled to a demolition permit because its application "met all the requirements for a demolition permit based on the laws then in effect." Motion for Preliminary Injunction ("Mot.") at 4 (ECF No. 11) (citing Appendix to Mot. ("App.") at App.146 (ECF No. 12)). By effectively denying East Austin's application based on an ordinance enacted months after the application was filed, the City did exactly what Chapter 245 forbids.

The City makes three arguments for why its actions were nonetheless lawful. None persuade.

**A. The City's existing historical review process**

The City seeks to excuse its reliance on the post-application ordinance by arguing that the ordinance was enacted as the culmination of a historical review process that the demolition application itself triggered. The City Code requires the City to consider historic designation whenever it receives an application to demolish a building that may have historic value. *See* AUSTIN CITY CODE § 25-11-213(B), (D). So, the City reasons, considering designation and then designating the building as historic merely applies the law in effect at filing, which is all Chapter 245 requires.

That argument is contrary to the plain text of Chapter 245. *See Baumgardner v. Brazos River Auth.*, 714 S.W.3d 597, 601 (Tex. 2025) (per curiam) (underscoring that courts "rely on the plain meaning of the statutory text" for questions of statutory construction). The text says that evaluation must be done "*solely* on the basis of any . . . ordinances . . . in effect at the time[.]" TEX. LOC. GOV'T CODE § 245.002(a)(1) (emphasis added). This means that any "ordinance" not "in effect at the time" cannot be a "basis" for evaluating the application. If the Texas Legislature had intended to create an exception for when an ordinance not in effect at the time was promulgated pursuant to existing legal process, it could have done so—but it didn't. *See Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390–91 (Tex. 2014) (citing *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010) ("We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind.")). Ordinance No. 20241212-090 thus cannot be a basis for evaluating the application because it post-dates the application, even assuming it was enacted pursuant to an existing process.

Reading the text as the City suggests would also frustrate the purpose of the legislation, which is to provide predictability. Almost any post-filing ordinance is adopted through some pre-existing process. The local legislative process by which any ordinance becomes law is a pre-existing process. The process here is undoubtedly more narrow in that it applies only in certain circumstances. But if the City's reading were correct, a city could simply build similar processes into all permit review to avoid the bite of Chapter 245. Courts across Texas reject such readings that would defeat what the statutory text means to accomplish. *See S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 679 (Tex. 2013) (rejecting a reading that would let a city "circumvent" a state-law protection by recharacterizing its ordinance); *see also Harper Park Two*, 359 S.W.3d at 255 (explaining that the "primary objective in statutory construction is to give effect to the Legislature's intent" and commanding courts to "seek that intent first and foremost in the statutory text" (cleaned up)).

### B. The municipal zoning exemption

The City next argues that Chapter 245's exemption for certain municipal zoning regulations applies. Under that exemption, a city may consider post-application "municipal zoning regulations that do not affect . . . property classification." TEX. LOC. GOV'T CODE § 245.004(2). The City argues that the historical use designation qualifies because it is undisputedly a "municipal zoning regulation" and it does not change the uses for the building. All it does is require East Austin to obtain a certificate of appropriateness before changing certain things about the building. Response ("Resp.") at 9 (ECF No. 13) (citing AUSTIN CITY CODE § 25-11-212(A)(1)).

That argument erroneously conflates "property *classification*" with "property *use*." In 2005, the Legislature amended

Chapter 245 and added the words "property classification" TEX. LOC. GOV'T CODE § 245.004(2) (amended by Act of May 9, 2005, 79th Leg., R.S., ch. 31, § 1, 2005 Tex. Gen. Laws 40–41). Because the Legislature did not define that term, the Court applies its "ordinary meaning." *Miles v. Texas Cent. R.R. & Infrastructure, Inc.*, 647 S.W.3d 613, 619 (Tex. 2022); *see also Thompson v. Texas Dep't of Licensing & Regul.*, 455 S.W.3d 569, 570 (Tex. 2014) (per curiam) ("Where a statutory term is undefined, that term is imbued with the plain meaning as commonly understood at the time of enactment."). Ordinary meaning often involves looking to dictionary definitions of statutory terms from around the time of enactment. *See Van Dyke v. Navigator Grp.*, 668 S.W.3d 353, 359–62 (Tex. 2023) (underscoring that "a text retains the same meaning today that it had when it was drafted" and looking to, among other things, "contemporary legal and lay dictionaries" to "ascertain[] a text's meaning").

Classification is defined as "the act or method of distributing into a class or category according to characteristics." *Classification*, MERRIAM-WEBSTER'S DICTIONARY OF LAW (1st ed. 1996). And a "class" is "a group of persons or things having characteristics in common." *Class*, MERRIAM-WEBSTER'S DICTIONARY OF LAW (1st ed. 1996); *see also Class*, BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "class" as "[a] group of people, things, qualities, or activities that have common characteristics or attributes"). Property classification is thus the categorization or grouping of property according to common characteristics.

East Austin's historic designation clearly affected "property classification" under this plain and ordinary meaning. TEX. LOC. GOV'T CODE § 245.004(2). The historic designation is titled "an ordinance rezoning and changing the zoning map," and it expressly "change[s] the base district." App.135. In

Austin zoning parlance, the property was rezoned from CS-MU-NCCD-NP to CS-MU-***H***-NCCD-NP. *Id.* (emphasis added). The ordinance thus moves the property from one category (property in a non-historic district) to a different category (property in a historic district). That plainly affects "property classification" by categorizing or grouping the property with other historically designated buildings, even assuming that East Austin can use the property in the same way now as before.

The City's contrary position finds no support in the cases the City cites. For example, the City relies on *FLCT, Ltd. v. City of Frisco*, 493 S.W.3d 238, 269 (Tex. App.—Fort Worth, 2016), for the proposition that "property classification is affected when an allowed 'use' is restricted." Resp. at 8. But *FLCT* did not hold that classification is *only* affected when use is restricted. It had no occasion to even consider that question. If anything, *FLCT*'s statement that "a property's classification pertains to the larger district in which it is zoned," supports this Court's conclusion that property classification means the sorting of property into different categories or groups. 493 S.W.3d at 269. The City's reliance on *Village of Tiki Island v. Premier Tierra Holdings Inc.*, is simply inapt. 555 S.W.3d 738, 741 (Tex. App.—Houston [14th Dist.] 2018, no pet.). It mentions classification only in passing and does not directly address section 245.004(2).

**C. Expiration of the application**

Finally, the City argues that any rights East Austin had under Chapter 245 to have its application considered based on the laws in effect at the time of filing expired a year after the application was filed. In support, the City points to Chapter 245's text stating that cities may consider the "expiration dates" in effect at the time of the application, TEX. LOC. GOV'T

CODE. § 245.002(a), and the City Code's text providing that "[u]nless a permit is issued, an application [] expires one year after the date the application is filed[,]" AUSTIN CITY CODE, § 25-11-266.

But even assuming the application expired, that does not defeat East Austin's rights. East Austin has a vested right to have its application evaluated using the ordinances in effect when the application was filed. *See* TEX. LOC. GOV'T CODE § 245.002(a). The City did not evaluate the application under those ordinances. The City cannot escape East Austin's right to a lawful evaluation of its application by refusing to grant an application based on a *new* ordinance and then claim the application expired. Were it otherwise, a city could defeat any Chapter 245 claim by ignoring an application until the application expired. Again, the City cannot so easily circumvent the statute. *See City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 601–04 (Tex. App.—San Antonio 2013) (holding that the city may not use procedural requirements to circumvent Chapter 245). The expiration date is not a statute of limitations on a Chapter 245 claim. A city may apply expiration dates in effect at the time the application was filed, *see* TEX. LOC. GOV'T CODE § 245.002(a), but it cannot use expiration to retroactively extinguish a Chapter 245 claim.

### II. Irreparable harm

It is not enough for a plaintiff to show a likelihood of success on the merits. A plaintiff must also demonstrate that it is "likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter*, 555 U.S. at 20. This requires a plaintiff to show that, absent preliminary relief, it will suffer "harm for which there is no adequate remedy at law." *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) (citing *Winter*, 555 U.S. at 20). An injury is not

irreparable if it can be "undone through monetary remedies." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) (quoting *Interox Am. v. PPG Indus.*, 736 F.2d 194, 202 (5th Cir. 1984)). But "[e]ven purely economic costs may count as irreparable harm where they cannot be recovered in the ordinary course of litigation." *Rest. L. Ctr. v. U.S. Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (quoting *Texas v. EPA*, 829 F.3d 405, 434 & n.41 (5th Cir. 2016)) (internal quotation marks omitted)).

East Austin has failed to make a showing of irreparable harm. East Austin's primary argument is that it faces unrecoverable carrying costs associated with the property. But East Austin has not provided any evidence that these costs are caused by the City's refusal to evaluate the demolition application as Chapter 245 requires. East Austin produced a declaration from the Vice President of Asset Management who manages East Austin, who avers that "[s]ince the City's historic designation, East Austin has incurred $1,071,326 in carrying costs, including property taxes, insurance, restoration and preservation, and security expenses on a structure it cannot lawfully demolish and that generates no revenue. East Austin's carrying costs are approximately $44,639 per month." App.147–48. But East Austin does not break out the costs any further. And as the City points out, there is no evidence that demolition would lower any of these costs. Resp. at 10–11. For example, property taxes would not change because the building is already valued at $0 by the Travis Central Appraisal District. App.44. Without any evidence—or even argument—that any costs would likely be avoided or lowered by the issuance of a preliminary injunction, there is no showing that irreparable harm will occur absent a preliminary injunction. *See Winter*, 555 U.S. at 22 ("[A] preliminary injunction will not be issued simply to prevent the possibility

of some remote future injury[.]") (citation omitted); *see also United States v. Abbott*, 110 F.4th 700, 720 (5th Cir. 2024) (en banc) (declining to find irreparable harm when a preliminary injunction is "nonresponsive" to the movants harms and leaves them "in much the same [] position").

East Austin attempts to save its carrying costs argument by asserting that "East Austin must incur these costs for a structure that it cannot lawfully demolish and redevelop, and which therefore generates no revenue." Reply at 8 (ECF No. 16) (citing App.147–48). But that is not an argument about costs at all. It is an argument about the ability to put the property to economically beneficial use. And that harm is not irreparable. A harm "is irreparable only if it cannot be undone through monetary remedies." *Dennis Melancon*, 703 F.3d at 279 (cleaned up). East Austin's complaint seeks both "compensation" and "compensatory damages" on its federal Takings Clause claim that East Austin has been "temporarily and permanently deprived . . . of all economically viable or beneficial uses of [its] propert[y]." Compl. at ¶¶ 48, 100 (ECF No. 1). That this compensation would occur (if at all) through the Takings Clause rather than Chapter 245 does not matter. What matters is whether the injury can be redressed with money "in the ordinary course of litigation." *Dennis Melancon*, 703 F.3d at 279 (citation omitted). By East Austin's own account, it can.[1]

---

[1] East Austin separately asserts that the losses it is suffering from the combination of carrying costs and an inability to use the property beneficially "threaten[] the very existence of [its] business." Mot. at 10 (quoting *Ryan LLC v. FTC*, 739 F. Supp. 3d 496, 517 (N.D. Tex. 2024)). But East Austin's only supporting evidence is the single conclusory statement (albeit in a declaration) that "[a]bsent injunctive relief, East Austin will no longer be a financially viable concern." App.148. That is insufficient for the Court to find that the business is unlikely to survive without the requested preliminary relief.

Apart from its carrying cost argument, East Austin argues that it faces irreparable harm in the form of potential tort liability on a negligence or premises theory because the property is in dangerous condition. Without more evidence that an injury is imminent, this harm is too speculative to support a preliminary injunction. *See United States v. Perez-Gallen*, 125 F.4th 204, 214–15 (5th Cir. 2024) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." (citation omitted)).

**III. Equities and public interest**

Both the equities and the public interest tilt in favor of a preliminary injunction. Although the City has an interest in protecting a historic landmark, "particularly at a time of extreme growth and rapid redevelopment throughout the city," Resp. App.97 at ¶ 11, the City has no interest in doing so unlawfully. *See BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021) (holding a government agency has no interest in enforcing an unlawful order). The City misapplies Chapter 245 and has no interest in its unlawful denial of East Austin's demolition permit. Both the equities and the public interest thus support an injunction requiring the City to evaluate the permit considering only the rules, regulations, and ordinances in effect at the time the application was filed.

* * *

Although East Austin has made a strong showing on the merits of their Chapter 245 claim and the equities and public interest support preliminary injunctive relief, that relief is denied because East Austin has not established that it is likely to suffer irreparable harm absent this Court's intervention.

## CONCLUSION

The motion for preliminary injunction is DENIED. ECF No. 11.

*So ordered by the Court on November 9, 2026.*

ANDREW DAVIS
United States District Judge